ASSIR M. LEWINE, Respondent, *v.* THE NATIONAL CITY BANK OF NEW YORK, Appellant, Impleaded with AZOVSKO DONSKOI KOMMERSCHESKII BANK, Also Known as BANQUE DE L'AZOFF DON, Defendant. (Appeal No. 1.)

Second Department, December 5, 1927.

Banks and banking — special deposit — action to recover deposit — deposit was made by letter containing many items of deposit for disposal of specified persons or corporations — particular item specified $200,000 disposal Russian bank " by order Engineer A. Levine, Petrograd "— letter of deposit did not mean that funds were exclusive property of bank — defendant did not have right to write off deposit against indebtedness of Russian bank — evidence — evidence of custom properly excluded since it was not relied on by defendant — interest — interest allowed from date of commencement of action.

This is an action to recover the balance remaining on a deposit in the appellant bank. The original deposit was made by a letter from a banking concern

which transmitted a check to the appellant bank, which specified the amount of several deposits and stated that the check was sent to the appellant bank on request of London bankers in accordance with instructions from the " Foreign Section Ministry Finance, Petrograd." The particular deposit in question was to the amount of $200,000 " disposal Banque Commerce Azoff Don, Petrograd, by order Engineer A. Levine, Petrograd." Subsequently, part of the deposit was paid out on cable advice from the Russian bank, which directed the payment to the brother of the plaintiff who was acting as plaintiff's agent in this country, and in each cable advice the plaintiff was referred to by name, and, furthermore, notices sent by appellant bank to plaintiff's brother were explicit in regard to the fact that the appellant was prepared to pay out against the deposit for specific purchases made by plaintiff's brother. The contention of the appellant bank that the deposit was made to the credit of the Russian bank and was exclusively the property of the Russian bank, and that, therefore, the appellant bank had the right to write off the deposit against an indebtedness due it from the Russian bank, cannot be sustained. The funds so deposited were not the property of the Russian bank but were held in special deposit to be disposed of on advice from the Russian bank on an order of the plaintiff, and the appellant bank had either actual or constructive notice of the ownership of the fund.

Evidence of the practice or custom of New York banks as to what is done with a deposit made " at the disposal " of a foreign bank " by order of " some particular individual, was properly excluded, since the appellant bank at no time relied upon the existence of such a custom, and at all times has contended that the $200,000 was a deposit by the Russian bank which it had a right to write off against the indebtedness of that bank to the appellant. And the appellant maintains this position, notwithstanding a large portion of the deposit was paid out upon advice from the Russian bank upon the order of the plaintiff.

Interest upon the balance remaining on deposit cannot be allowed from the date of the alleged demand said to have been made by the brother of the plaintiff in February, 1921, for the alleged demand at that time was not definite enough to require the bank to pay over the money. Interest may be allowed from the date of the commencement of the action, since the commencement of the action may be considered as a sufficient demand for the balance on deposit.

RICH and HAGARTY, JJ., dissent.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 28th day of December, 1926.

*Carl A. Mead* [*William Harvey Reeves, Harold Franklin Hopper* and *William Deering Howe* with him on the brief], for the appellant.

*David L. Podell* [*Philip Adler* with him on the brief], for the respondent.

*William C. Cannon* [*Ralph M. Carson* with him on the brief], as *amicus curiæ* on behalf of Guaranty Trust Company of New York.

*Hersey Egginton* [*Douglas R. Gray* with him on the brief], as *amicus curiæ* on behalf of Central Union Trust Company.

*Murray, Aldrich & Roberts*, as *amici curiæ* on behalf of The Equitable Trust Company of New York.

KAPPER, J. The liability of the appellant bank is predicated upon an alleged balance in its hands of a $200,000 deposit, amounting to $39,945. It is claimed by plaintiff that the $200,000 deposit was special, limited and restricted to and for him and his use. The appellant bank claims that these moneys were the deposit of a Russian bank called Azoff Don Bank at whose sole and only disposal this fund was; and that as the general account of the Azoff Don Bank at the time of the deposit constituted an indebtedness from it to the appellant of $1,400,000, the appellant asserted the right and thereupon undertook to reduce this indebtedness by crediting the Azoff Don Bank with the $200,000 upon its account. There is no dispute about what the appellant did.

The plaintiff was a Russian. He was engaged in that country during the World War in mining and in importing articles and materials for war uses. Purchases were contemplated in the United States and some were afterwards made with payments out of the deposit in question. Preceding the deposit it was necessary to obtain the sanction for it of the Russian government's foreign section of its Finance Department through whom and with the aid of the Azoff Don Bank, Russian rubles were exchanged for American dollars to the amount of $200,000. In due course there was forwarded to the appellant bank the following communication:

> " KIDDER, PEABODY & Co.
>   : " 115 Devonshire Street    17 Wall Street
>          " P. O. Box 7      P. O. Box 214
>            " Boston          New York
>                " By hand

" (Written in pencil): Special File

" (Time Stamp): The National City Bank of New York. For. Dept. Receiving Tellers. 1:40. May 12, 1916.

> " NEW YORK *May* 12, 1916.

" NATIONAL CITY BANK,
>        " New York City:

" DEAR SIRS.— At the cable request of Messrs. Baring Brothers & Co., Ltd., London, sent us ' in accordance instructions Foreign Section Ministry Finance, Petrograd,' we beg to enclose herewith our check, to your order, for $451,211.27 to be applied as follows:

" $12,593.71  disposal Aktiesellskabet M. J. Ballins Sonner, Copenhagen, by order H. & J. Cahn Bros., Petrograd,

" 69,710.00  disposal Banque Internationale Commerce Petrograd, Petrograd, by order Jacob Sereisky, Moscow,

" 4,516.62  disposal Banque Russo Anglaise,

" 4,738.00  Petrograd, by order Societe Russe,

" $11,750.00 Americaine Stolberg Co., Petrograd, (Written in ink) cabled.
" 19,040.00 disposal Banque Russe Commerce Industrie Petrograd, by order Societe Manufacturers Konchine, Moscow, (Written in ink): cabled.
" 8,500.00 account Russian Bank Foreign Trade, Petrograd, by order Carl Spade, Archangel,
" 50,000.00 disposal Banque Commerce Azoff Don, Petrograd, by order Societe Russe Fabrication Poudre, Petrograd, (Written in ink): cabled.   (Stamped): May 12 19—,
" 4,300.00 disposal Shlisser Co., Petrograd,
" 16,500.00 disposal Banque Moscou, Petrograd branch by order Mamontoff Bros.   Disposal Banque Moscou, Petrograd,
" $26,562.94 branch, by order Rappoport & Schreder Co., Odessa,
" 10,000.00 disposal Prof. Bachmetieff, by order Comite Central Militaire Industriel, Petrograd,
" 13,000.00 disposal Banque Moscow, Petrograd branch, by order Maison A. Veltz, Petrograd,
" 200,000.00 disposal Banque Commerce Azoff Don, Petrograd, by order Engineer A. Levine, Petrograd.   (Written in ink): cabled.   (Stamped): May 12.
" Kindly sign the enclosed receipts, in duplicate, and return to us.                    Very truly yours,
        " [Written signature] KIDDER, PEABODY & CO."

A letter from the appellant dated the same day is as follows:
                                    " May 12, 1916.
" BANQUE DE COMMERCE DE L'AZOFF DON,
        " Petrograd,
                " Russia:
" DEAR SIRS.— Confirming our cable of today we have credited your account $50,000. — (Fifty Thousand Dollars) by order of Societe Russe Fabrication Poudre, Petrograd, and $200,000.— (Two Hundred Thousand Dollars) by order of Engineer A. Levine, Petrograd.   The funds were paid to us by Messrs. Kidder, Peabody & Co., of this city, at the cable request of Baring Bros. & Co., Ltd., London, sent in accordance with instructions Minister of Finance, Section Etrangere, Petrograd.
                        " Respectfully yours,
        " THE NATIONAL CITY BANK OF NEW YORK."

Another communication is in evidence, as two separate exhibits, each purporting to be a translation of a Russian letter sent by the Azoff Don Bank to the plaintiff contemporaneously with this

transaction.   The variance between the two exhibits, as per trans-
lation, is not material, but the important fact, of which the appel-
lant may be presumed to have had knowledge, was the statement
in the communication that $200,000 was deposited for the plaintiff's
account in the appellant bank, one translation stating that this
was done " by the Government Chancellery for the Credit Division,"
and the other that such deposit was made " by the Government
Special Credits office."   Shortly after the deposit was made, cables
were received by the appellant bank from the Azoff Don Bank
which, in effect, directed the making of payments to the plaintiff's
brother who lived in Brooklyn and who was transacting plaintiff's
business and purchasing for him in this country.   These payments
aggregated slightly over $60,000, and appear to have been made
on separate occasions pursuant to the Russian bank's advices,
and all were acknowledged by the appellant bank including notifi-
cations sent to plaintiff's brother of the amounts paid on account
of plaintiff's purchases.   These cable advices explicitly refer to the
plaintiff by name.   The appellant's notices to the plaintiff's brother
were equally explicit in regard to the fact that the bank was prepared
to pay for the specific purchases.   Besides this $60,000, there was
a concession that an additional $100,000 had been paid out by the
appellant bank for which it was entitled to credit on this $200,000,
thus leaving the amount of plaintiff's claim, as before stated, at
$39,945.

Both sides requested a directed verdict.   Hence if there were
any disputed facts, and there do not seem to be any, the question
presented is whether this was a special deposit to the credit of
plaintiff, or whether the appellant bank was entitled to regard it
as the moneys of the Azoff Don Bank and to credit its account
with the appellant in the sum of $200,000 just as though plaintiff
was not mentioned at all in connection with the fund.

It was and is the contention of the appellant bank that the Kidder,
Peabody & Co. letter, above quoted, is to be construed as creating
a deposit of $200,000 in the general account of the Azoff Don
Bank; in other words, that it was $200,000 deposited by the Russian
bank which the appellant rightly charged off against the Russian
bank's then indebtedness to the appellant which amounted to
$1,400,000.   That does not appear to me to be a reasonable or fair
construction.   Whatever might have been said if the $200,000
item were the sole contents of the letter of deposit, it seems to
me apparent upon the face of this letter that the total sum of
$451,211 was deposited with the appellant bank " in accordance
instructions Foreign Section Ministry Finance, Petrograd," and
to be specifically " *applied* " as therein indicated, namely, *upon*

the orders of the individuals specifically named.   I am unable to construe this letter of deposit to mean that these various funds were the exclusive property of the foreign banks and at *their* disposal so as to permit a credit of the amount against an open indebtedness due the appellant bank from such foreign banks.   If the appellant's contention were allowed, then the names of all these individuals and companies set forth in the letter of deposit upon or " by " whose *orders* the specific funds were to be expended was just a waste of time in their inclusion in the letter and to be ignored as if never stated.

At the close of the case, and after the request of both sides for a direction of verdict, the learned trial justice said: " My theory of the case is this, and the reason for directing a verdict in favor of the plaintiff: I think there is a question of fact here to be determined as to whether the plaintiff's money was deposited with the National City Bank.   I think it was.   I think it could be fairly found that it was his money that was deposited there.   And then, did the National City Bank know, or in the exercise of reasonable inquiry should it have known that this was a special deposit and subject to control as to withdrawal by the plaintiff.   Now the manner of deposit, the letter of transmittal from Kidder, Peabody & Company and the acknowledgment show that the money was accepted upon the terms and conditions mentioned in the letter of transmittal and the witness this afternoon testified very plainly that it was understood, that he understood that to mean that the money had been deposited by the plaintiff."

The witness to whom the learned court referred, connected with the foreign collection import department of the National City Bank, and called by it on this trial, testified: " Q. Those words ' by order of Engineer A. Lewine, Petrograd,' did they mean anything to you as the agent of the City Bank in this transaction? A. Yes.   Q. What did they mean?   A. They meant that Engineer A. Lewine had given the order for the money to go to the City Bank."

Further colloquy between the trial justice and counsel showed the insistence of the defense that the instruction was to place this $200,000 " at the disposal of the Azoff Don Bank," the court, nevertheless, holding to the view that the meaning of the instruction was to put the money at " the disposal of the bank *upon* the order of the plaintiff," that all subsequent conduct inclusive of the letters and the payments was in support of that construction and that the whole case tended to establish that the appellant bank had either such " actual or constructive notice as would put a reasonably prudent banker upon inquiry under the law and the cases to ascertain who was the owner of the money."

In my opinion, the ruling of the trial justice was correct. If there could have lodged in the minds of the bank officials any doubt as to whose $200,000 this was, despite the bank's acts, conduct and correspondence, and the language of the letter of deposit itself, inquiry by it through its Russian channels with which the evidence showed it to be familiar and in complete touch, would have shown that this $200,000 was a special deposit and was not to be checked off on its books to lessen the general indebtedness of the Azoff Don Bank.

" One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge which the proper inquiry would disclose. Actual notice may be proved by direct evidence or it may be inferred or implied. Actual knowledge is not required. Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would have been warranted in inferring notice. If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed." (*Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225, 233.)

The case at bar does not seem to me to be distinguishable, in principle, from *Cutler* v. *American Exch. Nat. Bank* (113 N. Y. 593), where the plaintiffs paid to the defendant bank $500 upon the latter's promise to remit that sum for them to one Hall at Leadville, Col., the plaintiffs receiving from the defendant at the same time a " letter of advice " directed to the Leadville Bank, which stated that *the account of that bank was credited* that day with $500 " received from " plaintiffs " for the use of J. Seymour Hall," which letter plaintiffs forwarded to Hall, but before its receipt a failure of the Leadville Bank occurred and the receiver appointed for that bank refused to pay the money, whereupon plaintiffs demanded of the defendant bank that it carry out its agreement to pay to Hall or to refund the money and upon its refusal the plaintiffs brought action to recover the deposit. It was held that defendant received the money as a *special deposit* and was bound to retain it until drawn out under authority of the letter, the wording of which, that the Leadville bank's " account is credited " with the money, being controlled in its general application by the remainder of the clause which stated that it was " for the use of J. Seymour Hall."

The appellant, by calling several bank representatives, sought to prove that there was a practice or custom of New York banks as to what they do with a deposit made " at the disposal " of a foreign bank " by order of " some particular individual. The evidence was excluded and the appellant claims the ruling was error. The circumstances shown here do not permit of the application of a custom such as was said to prevail. The appellant bank's claim from the beginning was that the $200,000 deposited was a deposit by the Azoff Don Bank justifying the entry of it on the former's books as a credit to the Russian bank and a reduction of that bank's debit account by that sum. That position has steadily been asserted by the appellant to the present moment. It wants to be understood as at no time admitting that this $200,000 was subject to disposal directions from time to time by the Russian bank upon plaintiff's orders, notwithstanding it did this very thing, that is, the paying out of large sums at times to plaintiff's brother for plaintiff upon the cabled request of the Russian bank, clearly evidencing, as a matter of fact, that the plaintiff's orders or directions were at the basis of the requests. Given the same facts and circumstances as this record presents, any custom or habit of other banks to credit the indebtedness of a foreign bank to the exclusion of the one upon whose orders the fund was to be disbursed, should be ignored.

The remaining question relates to the amount of interest. Interest was allowed on the balance of this deposit from the date of an alleged demand said to have been made by plaintiff's brother in February, 1921, and the computation period was thereupon fixed from March 1, 1921, to the date of trial. Assuming, as I think we should, that the deposit was special for the account of the plaintiff, a demand by plaintiff would be a prerequisite to the running of interest. This demand does not seem to have been made with sufficient definiteness to require the bank to pay over to the plaintiff's brother the balance of the deposit.

The action appears to have been begun in November, 1923, date not definitely shown. From that time at least it would appear that plaintiff would be entitled to interest. The bank then, of course, knew of the plaintiff's demand, but, nevertheless, resisted it upon the ground which it took from the beginning, that the money was the Azoff Don Bank's and not the plaintiff's. That, therefore, entitled the plaintiff to interest from the commencement of the action. " The bringing of an action   *   *   *   is in effect a demand " for the purpose of the running of interest against a bank. (*Sickles* v. *Herold,* 149 N. Y. 332, 335.) A bank is entitled to retain a deposit " until some suitable request is made for its return."

6

(*Delahunty* v. *Central National Bank*, 37 App. Div. 434, 436.) " The authorities are far from uniform as to the precise nature of the demand, some using the expression that a demand in some form is necessary, leaving its sufficiency to be determined by the facts appearing in each case. Where, however, the bank by refusal, or by an appropriation of the money, or any other act. shows an indisposition to honor a demand, the cases hold that under such circumstances a demand is unnecessary." (*Delahunty* v. *Central National Bank, supra.*) It is not necessary in the present case to go to the extent of holding that no demand at all was required, but in the circumstances shown here, and in view of the bank's attitude and claim, the commencement of the action was a sufficient demand.

For the foregoing reasons, the judgment should be modified by reducing the computation of interest to the period commencing December 1, 1923, to the date of the trial, and as so modified the judgment should be affirmed, without costs.

YOUNG and LAZANSKY, JJ., concur; RICH and HAGARTY, JJ., dissent and vote for reversal and a dismissal of the complaint, being of opinion that there is no relation between plaintiff and defendant which entitles plaintiff to recover.

Judgment modified by reducing the computation of interest to the period commencing December 1, 1923, to the date of the trial, and as so modified affirmed, without costs.